IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL R. KOELBEL,            )
                              )
        Plaintiff,            )
                              )
   vs.                        )   Civil Action No. 09-294-E
                              )
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                              )
        Defendant.            )

O R D E R

AND NOW, this 24th day of February, 2011, upon consideration of Defendant's Motion for Summary Judgment (document No. 9) filed in the above-captioned matter on May 21, 2010,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 7) filed in the above-captioned matter on April 19, 2010,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On April 27, 2006, Plaintiff, Daniel R. Koelbel, filed his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff claimed that he became disabled on August 20, 2003, primarily due to a panic disorder.

Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ"). In a decision dated December 18, 2008, the ALJ denied Plaintiff's request for benefits. The Appeals Council declined to review the ALJ's decision on September 29, 2009. R. 6-8. This appeal followed.

II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g));

2

Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citations omitted). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (citations omitted). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001)(internal quotation marks and citations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his

3

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy... .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

## III. **Plaintiff's Medical Records: Dr. Bazzoui**

On November 25, 1997, Defendant was first seen by Widad Bazzoui, M.D., a psychiatrist, who made a diagnosis of panic disorder, personality disorder, compulsive and alcohol and marijuana abuse in remission. R. 248. Beginning in 1997, Dr. Bazzoui prescribed a number of medications for Plaintiff's panic disorder and saw him on a regular basis for "medication checks." See, e.g., R. 171-175; R. 245-254; R. 315-335. On September 11, 2008, Dr. Bazzoui completed a "Medical Source Statement," in which he opined that Plaintiff had a range of restrictions. R. 176-179.

## IV. **The ALJ's Decision**

The ALJ found that Plaintiff met the non-disability requirements set forth in section 216(i) of the Social Security Act and that he was insured for disability benefits through December 31, 2007. R. 25. Accordingly, to be eligible for DIB

4

benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ next applied the sequential evaluation process when reviewing Plaintiff's claim for benefits.[1] At Step One of the sequential evaluation, the ALJ found that Plaintiff had worked after the established disability date. The ALJ found that this work activity "demonstrated the ability to perform substantial gainful activity." Nevertheless, the ALJ did not find that Plaintiff had *actually* engaged in substantial gainful activity. At Step Two, the ALJ found that Plaintiff suffered from a severe mental impairment, primarily, panic disorder. In making this determination, the ALJ relied primarily on the opinion of John Addis, Ph.D, a psychologist, who conducted a consultative examination on January 22, 2004. R. 14-15. The ALJ only mentioned Plaintiff's treating psychiatrist, Dr. Bazzoui, in passing. At Step Three, the ALJ found that Plaintiff did not have a listed impairment, as set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. Before moving on to Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. In reaching this conclusion, the ALJ focused on Plaintiff's lack of credibility,

---

1 The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability

5

mentioning Dr. Bazzoui in only one sentence with reference to five progress notes regarding office visits that took place between November 2006 and July 2008. R. 16; R. 171-175. Thereafter, the ALJ resolved Step Four in Plaintiff's favor.

At Step Five, the ALJ asked the vocational expert to determine whether there were a significant number of jobs in the national economy that Plaintiff could perform, given his RFC and other factors. Based on this testimony, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy and that, therefore, Plaintiff was not disabled.

## V. Legal Analysis

Plaintiff argues that the ALJ erred when he failed to give proper weight to the medical opinion of Plaintiff's treating psychiatrist, Widad Bazzoui. Because the Court believes that the record is unclear as to whether proper weight was given to the treating psychiatrist's opinion in this case, it will remand the case for further consideration.

When assessing a plaintiff's application for benefits, the opinion of the plaintiff's treating physician is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.

---

as defined by the Act. See 20 C.F.R. § 404.1520.

1999)(citing 20 C.F.R. § 404.1527). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the Commissioner may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer, 186 F.3d at 429.

The opinions of treating physicians are given greater deference because these doctors are "employed to cure and ha[ve] a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). This is especially true "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). In fact, the applicable regulations acknowledge the special ability of a treating physician when assessing a plaintiff's condition and provide as follows:

> [treating physicians] are likely to be the
> medical professionals most able to provide a
> detailed, longitudinal picture of [the
> plaintiff's] medical impairment(s) and may bring
> a unique perspective to the medical evidence
> that cannot be obtained from objective medical
> findings alone or from reports of individual
> examinations, such as consultative examinations
> or brief hospitalizations.

20 C.F.R. § 416.927(d)(2).

It is not clear that the ALJ's decision is consistent with these commands because it gave little consideration to the "detailed, longitudinal picture" of Plaintiff's impairments found in his treating psychiatrist's records and failed to reconcile contradictory evidence, if any, found in the opinions of the state's consultative examiner. The ALJ barely mentioned Dr. Bazzoui at all, even though it appears that he is the only psychiatrist who examined Plaintiff, and he did so on an on-going basis over a significant number of years. The ALJ did not properly discuss Plaintiff's medical records in determining Plaintiff's RFC and failed to assign weight to any of the medical sources. For example, the ALJ did not even mention Dr. Bazzoui's "Medical Source Statement." While it may be true that such "checkbox" reports may constitute "weak evidence at best," Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993), the ALJ failed to discuss whether this report was supported or contradicted by the medical records.[2]

---

2 In its Brief, Defendant does not address the significance of

In short, the record simply does not permit the Court to determine whether the ALJ's decision is supported by substantial evidence. Accordingly, the Court will remand for the ALJ to re-evaluate Plaintiff's impairments and residual functional capacity. On remand, the ALJ should appropriately weigh the medical evidence of record and fully develop his reasons for affording the weight given to such evidence.

## VI. Conclusion

The Court finds that substantial evidence does not support the ALJ's decision in this case. Accordingly, the Court will remand for the ALJ to re-evaluate Plaintiff's mental impairments. In particular, the ALJ should reconsider the weight to be given to the medical evidence of record and more fully develop his reasons for affording that weight.

s/Alan N. Bloch
United States Distict Judge

ecf: Counsel of record

this report.